IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. FAY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BROK A. FAY, APPELLANT.

Filed October 3, 2023.    Nos. A-22-910, A-22-911.

Appeals from the District Court for Pawnee County: RICKY A. SCHREINER, Judge. Affirmed.

Lindy L. Mahoney, of Nestor & Mercure Attorneys, for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Brok A. Fay appeals his convictions in two separate cases which have been consolidated on appeal. Pursuant to a plea agreement encompassing both cases, Fay pled no contest to flight to avoid arrest, obstructing a peace officer, failure to appear on bond in case No. A-22-910; and to criminal mischief (more than $1,500 but less than $5,000) and third degree domestic assault, first offense in case No. A-22-911. The district court for Pawnee County sentenced Fay to an aggregate sentence of 2 years' imprisonment and 1 year of post release supervision in the first case and an aggregate sentence of 1 year imprisonment in the second case. The court ordered the two sentences to run consecutively. On appeal, Fay asserts he received ineffective assistance of trial counsel. Upon our review, we affirm.

- 1 -

## BACKGROUND

In November 2021, the State filed an information in case No. A-22-910, charging Fay with two counts: one count of flight to avoid arrest in a willful reckless manner, a Class IV felony pursuant to Neb. Rev. Stat. § 28-905 (Reissue 2016), and one count of obstructing a peace officer, a Class I misdemeanor pursuant to Neb. Rev. Stat. § 28-906 (Reissue 2016). The State later amended its original information, adding a third count of failure to appear on bond, a Class IV felony pursuant to Neb. Rev. Stat. § 29-908 (Reissue 2016).

On May 17, 2022, the State filed an information in case No. A-22-911, charging Fay with four counts: one count of criminal mischief (more than $5,000), a Class IV felony pursuant to Neb. Rev. Stat. § 28-519 (Reissue 2016); one count of reckless driving, first offense, a Class III misdemeanor pursuant to Neb. Rev. Stat. § 60-6,213 and § 60-6,215 (Reissue 2021); one count of unauthorized use of a propelled vehicle, first offense, a Class III misdemeanor pursuant to Neb. Rev. Stat § 28-516 (Reissue 2016); and one count of third degree domestic assault, first offense, a Class I misdemeanor pursuant to Neb. Rev. Stat. § 28-323 (Reissue 2016).

Pursuant to a global plea agreement, in case No. A-22-910, the State amended count I from flight to avoid arrest in a willful reckless manner, a Class IV felony, to flight to avoid arrest, a Class I misdemeanor pursuant to § 28-905. The other two charges remained the same. Fay pled no contest to all three counts of the State's amended information. In addition, in case No. A-22-911, the State amended count I from criminal mischief (more than $5,000), a Class IV felony, to criminal mischief (more than $1,500 but less than $5,000), a Class I misdemeanor pursuant to § 28-519. The State dismissed counts II and III and left count IV as originally charged. Fay pled no contest to the amended count I and the original count IV, third degree domestic assault, first offense.

At the plea hearing, the district court recounted the global plea agreement and Fay affirmed that he understood the charges and conditions of the agreement. The court also reviewed with Fay the possible outcomes of his guilty or no contest pleas, including receiving concurrent or consecutive sentences. Fay confirmed that he had enough time to talk to his trial attorney about his case and was satisfied with the work his attorney had done so far.

The State then provided a factual basis for the charges in each of the cases. For case No. A-22-910, the State provided:

> [O]n or about June 18th of 2021, Sheriff Lang received Information from Nicole Valdez that the defendant, Brok Fay, was having a mental crisis. She advised the sheriff that [Fay] had been drinking heavily and was suicidal. She indicated he was armed with a knife. The sheriff's office responded to her residence which was located in Pawnee City and began looking for [Fay]. A short time later, the deputy or the sheriff could hear yelling from in front of the Valdez residence, and the sheriff then engaged with [Fay] in an attempt to get him to surrender himself.
>
> At the time, [Fay] was in his vehicle in front of the Valdez residence parked in the street. His driver's window was down. [Fay] repeatedly yelled for the sheriff to stay back, and there was a verbal exchange between [Fay] and the sheriff for approximately 20 to 30 minutes trying to get him to surrender himself.

- 2 -

[Fay] then shifted his car into gear and drove eastbound down Eighth Street in Pawnee City and then turned and went around the block heading north to -- onto 11th Street where he was blocked in by law enforcement.

By this time, the sheriff had called four accountants [sic] from the Johnson County Sheriff's Office and from the Nebraska State Patrol. [Fay] stopped his vehicle in the middle of 11th Street, got out facing the officers and acted like he was trying to take -- had taken a firearm out of his vehicle and stuck it in his waistband, and he repeatedly made gestures like he was trying to draw a weapon.

He then jumped back in his vehicle, drove at a high rate of speed through a residence at that location until he got onto 13th Street with the various law enforcement cruisers following him, attempting with their lights on -- attempting for him to stop. They tried to block him at the next intersection.

However, [Fay] drove around the cruisers. The sheriff observed that as [Fay] continued northbound towards the north edge of town, that he was weaving all over the road from one ditch to the other. As he approached the gravel portion, the portion of the road that turns to gravel on that -- that location, he observed [Fay] take his seat belt off and accelerate, switching -- driving onto the gravel and caused his vehicle to fishtail, [Fay] hanging out of his window flipping the sheriff off.

He then turned onto Highway 50 and proceeded northbound out of town. The sheriff observed [Fay] to continue to weave back and forth onto the oncoming lane of travel. For this reason, then, the sheriff decided to end the pursuit and force the vehicle -- [Fay's] vehicle into the ditch. [Fay] then refused to get out of the vehicle. He continued to try and maneuver his vehicle to get away from the law enforcement officers.

He, then, grabbed a ten-inch boning knife and put it to his throat. He did exit the vehicle, approached the -- approached the sheriff. He was warned to stop advancing with the knife. He then re-entered the vehicle. He had gotten into the vehicle and put it in drive and propelled the car forward a few feet, then reversed it, the vehicle, still in the ditch for a short distance.

At that time, the sheriff deployed his -- his pepper spray, and simultaneously, Deputy Lyon from Johnson County Sheriff's Office deployed his taser. [Fay] -- those efforts caused [Fay] to exit the vehicle and drop the knife, and he was forcibly taken into custody at that time. He was charged with flight to avoid arrest, a Class IV felony, and was released on bond.

He was ordered to appear in court on January 18th, 2022. At that time, he failed to appear, and a -- that was not his initial appearance. He had appeared on prior occasions in January of 2022. He failed to appear and he failed to surrender himself within three days thereafter. He had left the jurisdiction.

All those events occurred in Pawnee County, State of Nebraska.

For case No. A-22-911, the factual basis was as follows:

[A]gain, the Pawnee County Sheriff was dispatched to the Valdez residence. This time, it was September 21st of 2021. Sheriff Lang responded to a motorcycle crash that had occurred near the residence. He made contact with Nicole Valdez, who indicated that the

defendant, Brok Fay, was having a manic episode. She was unsure of what set him off but he had taken a large amount of Seroquel tablets, and that the two had been in a verbal altercation.

That in the process he had broken a window to the door of the house and then taken off on her motorcycle and proceeded to wreck the motorcycle. He accelerated hard down the sidewalk, and then when he attempted to turn at the end of the sidewalk, he was unsuccessful and wrecked the bike. The sheriff observed that the handle bars were bent and the windshield was broken and there were various dents and scratches on the bike.

This motorcycle was owned by Nicole Valdez, and for the purpose of a factual basis, had a value of more than $5,000. Ms. Valdez reported insurance totaled the motorcycle. I believe she told me it was approximately a $10,000 motorcycle.

In her statement that she gave to the sheriff's office, then, after the incident, she indicated that he had broken the window and the front door as well as kicking the bottom of the door causing damage. He left blood all over the upstairs bedroom and broke the bedroom door from hitting it and kicking it, and it -- and that he had pushed her around during this altercation.

All these events occurred in Pawnee County, State of Nebraska.

In each case, the court found that there were sufficient facts to support Fay's no contest pleas. The court accepted Fay's pleas and found him guilty of each offense remaining in the amended informations. The court also ordered the preparation of a presentence investigation report (PSR).

Sentencing was originally scheduled for September 19, 2022. On this date, the State informed the court that additional charges were now pending against Fay. Neither the court nor defense counsel remarked on the alleged new charges. Defense counsel did, however, request a continuance of the sentencing hearing because Fay was hospitalized and unable to appear in court. The court granted the continuance.

Sentencing then occurred on November 7, 2022. The State began its argument by again noting that Fay had additional charges currently pending in county court. The State indicated it was hesitant to recommend probation as a sentence, but also did not argue that probation was necessarily inappropriate under the facts of this case. As the State continued with its sentencing argument, the court reporter noted that Fay and his trial counsel conferred three times. The following exchange occurred at the conclusion of the State's argument:

THE COURT: So there's a new filing that has occurred since [A-22-911]?

[STATE]: Let me make sure I got -- yes. There's one in County Court right now.

THE COURT: The one in County Court right now, is that a felony case or is it -- I guess it doesn't matter. It's not here. He is innocent until proven guilty.

[FAY]: (Witness nodded head in the affirmative.)

[STATE]: It is another felony.

THE COURT: I won't consider it.

Fay told the court that he was confused, and he did not understand what was happening. He and his counsel conferred two more times before counsel informed the court that Fay now wished to

retain private counsel on these matters. Fay interrupted his trial counsel, and the following exchange occurred:

> [FAY]: I'm confused right now. I'm really confused because I don't understand. Right now, it's only allegation.
>
> THE COURT: We are here on the two cases that you have been found guilty on. There are no further allegations that we are bringing up today. We are just here for sentencing on the two cases that are pending in front of you right now.
>
> The other case, none of my business, not even concerned about it. So we are here for sentencing. Do you understand that?
>
> [FAY]: Yeah.

The sentencing hearing proceeded with Fay's counsel asking that Fay be sentenced to a term of probation, rather than a period of incarceration. Fay was also given an opportunity for allocution, in which he, too, asked for a sentence of probation. The court then inquired "Any reason I should not sentence you today?" and Fay replied "No." After the conclusion of the parties' sentencing arguments, the court indicated that it had considered Fay's age, mentality, education, experience, social and cultural background, past criminal record, record of law-abiding conduct, motivation for the offense, the nature of the offense, and any violence involved in the offense.

The court noted that information in the PSR revealed that, at the time of sentencing, Fay was 36 years old and had a somewhat lengthy criminal history. He had a conviction in Florida and two convictions in Indiana, one of which was criminal trespass. The court also noted that Fay had a history of failing to appear. The court further noted that Fay scored high on the criminal history and anti-social pattern scales, and very high on the substance abuse scale contained in the Level of Service/Case Management Inventory (LS/CMI). Finally, the court noted that on the Substance Abuse Questionnaire (SAQ), Fay received the following scores: 93 percent for drugs; 91 percent for alcohol; 90 percent for anti-social behavior; and 78 percent for violence. The alcohol, drugs, and social behavior scores were all within the maximum-risk range.

After considering the required factors and reviewing the PSR, the district court found that Fay was not a suitable candidate for probation. The court elaborated that it could not find that the circumstances present in the two cases before it for sentencing were unlikely to recur or that Fay's character and attitude suggested he was unlikely to commit another crime.

In case No. A-22-910, the court sentenced Fay to 1 year imprisonment on his conviction for flight to avoid arrest, 1 year imprisonment on his conviction for obstructing a peace officer, and 2 years' imprisonment on his conviction for failure to appear on bond, all to run concurrently with each other. The court also ordered that on the failure to appear charge, following his release, Fay was to be placed on 12 months of post-release supervision. In case No. A-22-911, the court sentenced Fay to 1 year imprisonment on each of his convictions for criminal mischief (more than $1,500 but less than $5,000) and third degree domestic assault, first offense. The court ordered that these sentences run concurrently with each other. However, the sentences in case No. A-22-911 were ordered to run consecutively to the sentences in case No. A-22-910. Fay appeals.

ASSIGNMENTS OF ERROR

Fay assigns that he was denied the right to effective assistance of counsel due to his trial counsel's (1) failure to request a continuance at the sentencing hearing to investigate the State's claim of additional pending charges, and (2) failure to address Fay's confusion at sentencing.

STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

ANALYSIS

Fay assigns that he was denied the right to effective assistance of trial counsel. Specifically, Fay alleges that his trial counsel was ineffective for (1) failing to request a continuance at sentencing to investigate the State's claims of additional pending charges, and (2) failing to address Fay's confusion at sentencing. Upon our review of the record, we find that neither of these claims has merit.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Fay has different counsel on appeal than he had at trial, and as a result, he must raise any allegations of ineffective assistance of trial counsel on direct appeal. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims; an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The two prongs of this test may be addressed in either order, and the entire ineffective assistance analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim

is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading. *Id.*

Fay first argues that his counsel was deficient for failing to request a continuance at sentencing to investigate the State's claim of additional pending criminal charges. This claim is without merit because Fay cannot demonstrate either that counsel performed deficiently or that he was in any way prejudiced by counsel's failure to investigate any new criminal charges pending against Fay. During the sentencing proceedings, the district court explicitly declared that it would not consider any alleged pending charges when determining the appropriate sentences for case Nos. A-22-910 and A-22-911. The declaration was firmly made on the record:

> THE COURT: So there's a new filing that has occurred since [A-22-911]?
>
> [STATE]: Let me make sure I got -- yes. There's one in County Court right now.
>
> THE COURT: The one in County Court right now, is that a felony case or is it -- *I guess it doesn't matter. It's not here. He is innocent until proven guilty.*
>
> [FAY]: (Witness nodded head in the affirmative.)
>
> [STATE]: It is another felony.
>
> THE COURT: *I won't consider it.*

(Emphasis supplied.) The court also told Fay the alleged additional charges were none of the court's business and that the court was not concerned about it. At this point, trial counsel had no reason to question the court's representations, request a continuance, or investigate the new charges. The court had emphatically determined that any potential new charges would not be a sentencing factor for the current cases. Thus, counsel's failure to request a continuance was not deficient.

In addition, even if we were to assume counsel's performance was deficient, Fay was not prejudiced by trial counsel's performance. Fay alleges that he was sentenced to a term of incarceration rather than being placed on probation because of trial counsel's failure to investigate the alleged new charges. Fay appears to indicate that such investigation would have revealed that no such new charges actually existed and that had the court known this, it would not have imposed prison sentences. The evidence does not support Fay's allegation. Not only did the court state categorically that it would not consider any new charges, but it also stated the reasons justifying incarceration. In determining Fay's sentences, the district court considered Fay's age, mentality, past criminal record, and other relevant factors. The court noted that Fay had a somewhat lengthy criminal history and a history of failing to appear in court. The court also reviewed the PSR and Fay's various scores on the LS/CMI and SAQ. Of particular concern were Fay's high and very high scores with respect to criminal history, anti-social behavior, violence, and substance abuse scales on the LS/CMI and SAQ.

Based on the totality of the statutory factors and the content of the PSR, the district court found that Fay was not a suitable candidate for probation. The court did not reference, mention, or even allude to the alleged new charges when determining Fay's sentences. In fact, the court elaborated that probation was an inadequate sentence because the court could not find that the circumstances were unlikely to recur or that Fay's character and attitude suggested he was unlikely to commit another crime. Thus, trial counsel's alleged failure to investigate the new charges had no impact on the ultimate sentence of incarceration which the court imposed.

On appeal, Fay also argues that his trial counsel was ineffective for failing to address Fay's confusion at sentencing. This claim is also without merit. The record clearly shows that Fay declared in open court that he was confused and did not understand the relevance of the new case pending against him. The district court directly addressed Fay's confusion as follows:

THE COURT: We are here on the two cases that you have been found guilty on. There are no further allegations that we are bringing up today. We are just here for sentencing on the two cases that are pending in front of you right now.

The other case, none of my business, not even concerned about it. So we are here for sentencing. Do you understand that?

[FAY]: Yeah.

Fay's "[y]eah" was confirmation that his confusion was cured by the court's statement. Based on the record, Fay's trial counsel had no reason to believe Fay was still confused or that Fay required additional information or counseling on the subject. Further, before imposing sentence, the court also inquired: "Any reason I should not sentence you today?" and Fay responded "No." If Fay was still confused or desired additional time to confer with trial counsel, this would have been the time to indicate as such. Instead, Fay told the court that there was no reason to delay sentencing. And there is nothing in the record to suggest that his trial counsel should have known or believed otherwise. Because Fay clearly communicated to the court that he was no longer confused, he cannot establish that counsel's performance was deficient or that he was prejudiced by trial counsel's performance. Therefore, Fay's second claim of ineffective assistance of counsel fails.

In his brief on appeal, Fay makes two additional arguments: first, that his trial counsel failed to research the alleged new charges pending against him between the September 2022 sentencing hearing, when the State first raised this issue, and the rescheduled November 2022 sentencing hearing. Fay suggests that, at the November sentencing hearing, counsel should have known that there were no new charges, and thus, counsel's performance was deficient; and second, that his trial counsel failed to request a continuance or recess to address Fay's request for alternate counsel. However, we will not consider these allegations further in our analysis because they were not specifically assigned in Fay's brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.